Jesse Pierce, plaintiff in error, vs. John D. Hicks, defendant in error.

The keeper of a tippling house has a right to defend himself against a dangerous assault made upon him therein by a person who has drunk there to intoxication, although such a house be not what is termed in law a man's castle.

Trespass.   In Wilkinson Superior Court.   Tried before Judge Augustus Reese.   April Term, 1866.

The action was by the plaintiff in error against the defendant, for a battery.   The case made by the evidence was substantially as follows :

In January 1860, the defendant kept a retail liquor shop in the town of Irwinton.   The plaintiff had been drinking there one day, and late in the afternoon, being drunk, got into a quarrel in the shop, with a Dr. Hudson.   He cursed, was noisy, and had a small knife open in his hand.   The defendant, saying it was his duty to keep order in his house, spoke to the plaintiff kindly, and told him he must stop his fuss or leave the house.   The plaintiff refused to go out, and a by-stander, taking hold of him, pulled him out, and tried to keep him from going back.   He would and did return, however, and with his knife drawn and raised in his hand, advanced towards defendant, in the house, threatening to cut him.   When he was just inside of the door, and still advancing, defendant struck him with a stick, giving him a severe injury over the eye, and knocking him down, or, at least, making him stagger back.   Defendant was sober, and was larger and more powerful than the plaintiff.

One witness stated, that as the plaintiff was taken out and was near the door, the witness saw a stick raised, and the plaintiff was stricken " by some person " (the witness, on account of the crowd, could not see who) two or three licks on the back of the head.   Of four other witnesses who saw the difficulty, including the person who took the plaintiff out, none testified that he was stricken while going out

of the house, or on the back of the head. They all stated that the striking occurred after he had turned upon the defendant in the house; and one of them said the defendant retreated slightly before he struck the blow.

The plaintiff requested the Court to charge the jury, that if the plaintiff was made drunk with liquor drank at defendant's shop, greater caution and more forbearance on the part of defendant towards him, should be required to justify an assault or injury. The Court refused so to charge.

The jury found for defendant generally, and the plantiff moved for a new trial on several grounds:

1, 2, 3. Because the verdict was contrary to evidence, to law, and to law and evidence.

4. Because the Court refused to charge as requested.

5. Because the Court charged that the dwelling house and business house of every citizen was his castle; that no person, after leaving such house upon request, or being, after request to leave, ejected, had any right to re-enter unless armed with legal authority, and he does so at his own risk; and that if defendant's house was a licensed grocery, the law put him upon the same footing with other citizens in controlling his house.

The Court refused a new trial, and the plaintiff excepted.

CUMMING, DEGRAFFENREID, and MURPHY, for plaintiff in error.

RIVERS, POWERS, and CARSWELL, for defendant.

HARRIS, J.

It is related in a biographical sketch of the celebrated Lord Ellenborough—when simply Mr. Law—that during the trial of Warren Hastings, Mr. Sheridan, one of the managers conducting the impeachment, in the fervor of his speech, said : "That the treasures of the Tenana of the Begum was an offering laid by the hand of piety upon the

altar of the saint." Mr. Law, in a sarcastic tone, inquired "How the Begum could be considered a saint, and how the camels, the better part of her treasures, were to be laid on an altar." Mr. Sheridan replied, "That it was the first time in his life that he had ever heard of special pleading on a metaphor, or a bill of indictment against a trope."

Has not our brother De Graffenreid—whose chief ground of complaint against the charge of Judge Reese, is, that he submitted to the jury as law that defendant's shop was "his castle," and as such its inviolability—done precisely what the distinguished lawyer mentioned did,—make war on a metaphor?

I am fully sensible how very difficult it is for a gentleman of refined literary cultivation, by any effort of the will, to bring his senses into such subjection to an abstraction, an ideality, so as to regard a shop redolent with the perfume of corn whisky—*quo semel est imbuta recens servabit odorem* "*casa*"*din*—as a royal or baronial castle—a fortress, like the proud keep of Winsor, rising in the majesty of proportion, and girt with the double belt of its kindred and coeval towers—an awful structure, defended by power, and overseeing and guarding a subjected land.

He must strip this shop of its accessories, and learn to contemplate it not in the concrete.

How, otherwise, could the patriot scholar glow with enthusiasm when he listened to the vehement and boldly figurative illustration, by Lord Chatham, of that undoubted maxim of the English law, "That every man's house is his castle"— "The poorest man may in his cottage bid defiance to all the forces of the crown. It may be frail—its roof may shake—the wind may blow through it—the storm may enter, but the king of England cannot enter! All his force dares not cross the threshold of the ruined tenement."

Can a principle be less law because it is enunciated in such splendid declamation?

It enforces, not in the stolid and jejune style of many of the venerated common law writers, (worthy of immortality

in a Dunciad) but in burning eloquence, the sacredness and inviolability of home—the uncontrollable dominion of the tenant of the cabin, alike with that of the lord of the·castle.

We will not elaborate this idea further.

The record furnishes us with the testimony of an uncontradicted witness, who says, that after plaintiff had been mildly rebuked by defendant for his disordly conduct, plaintiff arose very much offended, cursing and threatening, and advanced with a small drawn knife upon defendant, as if intending to cut him. Defendant gave back. In such a case, is there any principle of law which required the .defendant to flee from his own house—to wait until the plaintiff had struck with his knife, before attempting to disable him? We think not. Even on the public square, or in the street, the defendant would have been justified, under the provisions of our penal code, in doing what he did.

The defendant, moreover, was bound by the requirements of statute to keep an orderly shop, and was liable to prosecution for a failure.

Does not this requirement sanction the use of all means that are proper, and not excessive, to accomplish so salutary an end?

The plaintiff, upon the testimony in the case, was not entitled to damages.

Let the judgment be affirmed.